UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EUCLIDES BARTOLOMÉ BUGLIOTTI, MARIA CRISTINA DE BIASI, ROXANA INÉS ROJAS, DENISE LAURET, AND MARIA CARLA GONANO,

              Plaintiffs,

-against-

THE REPUBLIC OF ARGENTINA,

              Defendant.

No. 23 CV 6588 (LAP)

MEMORANDUM & ORDER

---

LORETTA A. PRESKA, Senior United States District Judge:

    Euclides Bartolomé Bugliotti, Maria Cristina De Biasi, Roxana Inés Rojas, Denise Lauret, and Maria Carla Gonano (collectively, "Plaintiffs") bring this second action against the Republic of Argentina ("the Republic") for damages resulting from the Republic's alleged default on bonds.[1]  The Republic moves to dismiss the action pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), (5), and (6).[2]  Plaintiffs oppose.[3]  For the following reasons, the Republic's motion to dismiss is granted.

I. **Background**

    This is Plaintiffs' second action against the Republic and the Republic's third 12(b) motion before the Court.  This action

---

[1] (See Compl., dated July 28, 2023 [dkt. no. 1].)

[2] (See Def.'s Notice of Mot. to Dismiss, dated Oct. 16, 2023 [dkt. no. 17]; Def.'s Mem. of Law in Supp. of Mot. to Dismiss ("Def.'s

(continued on the following page)

arises between Plaintiffs, who are citizens and residents of Argentina, and the Republic, a foreign state under the Foreign Sovereign Immunities Act ("FSIA").  (See Compl. ¶ 2); see 28 U.S.C. § 1603(a).

## A.   Factual Background

The instant action derives from the same "[b]onds, claims, transactions, and occurrences . . . as in the prior action [before this Court,] 17 Civ. 9934."  (Compl. ¶ 23.)  The Court presumes familiarity with the facts and lengthy history of the prior case, which this Court and the Court of Appeals have recounted at length.

In short, Plaintiffs are the beneficiaries of trusts holding $35.8 million of Argentine bonds.  (Id. at 2.)  Plaintiffs originally purchased the bonds pursuant to the Fiscal Agency Agreement dated October 19, 1994 ("FAA").  (Id. ¶¶ 6-7.)  The terms of the FAA required the Republic to make payments for principal

---

Br."), dated Oct. 16, 2023 [dkt. no. 18]; Def.'s Notice under Rule 44.1, dated Oct. 16, 2023 [dkt. no. 19]; Decl. of Rathna J. Ramamurthi in Supp. of Mot. to Dismiss ("Ramamurthi Decl."), dated Oct. 16, 2023 [dkt. no. 20]; Def.'s Reply Mem. of Law in Supp. of Mot to Dismiss, dated Jan. 9, 2024 [dkt. no. 33]; Decl. of Rathna J. Ramamurthi in Supp. of Reply, dated Jan. 9, 2024 [dkt. no. 34]; Decl. of Carlos M. Tombeur in Supp. of Reply, dated Jan. 9, 2024 [dkt. no. 35]; Decl. of Caja de Valores in Supp. of Reply, dated Jan. 9, 2024 [dkt. no. 36].)

[3] (See Pl.'s Mem. of Law in Opp'n to Mot. to Dismiss ("Opp'n Br."), dated Nov. 27, 2023 [dkt. no. 27]; Decl. of Michael C. Spencer in Opp'n to Mot. to Dismiss ("Spencer Decl."), dated Nov. 27, 2023 [dkt. no. 28]; Decl. of Mario A. Carregal & Roberto E. Silva, Jr., dated Nov. 27, 2023 [dkt. no. 29]; Notice under Rule 44.1, dated Nov. 27, 2023 [dkt. no. 30].)

and interest on the bonds.  (Id. ¶ 9.)  Moreover, under the FAA, the Republic appointed Banco de la Nación Argentina as its agent for service of process, waived sovereign immunity, and submitted to the jurisdiction of this Court.  (Id. ¶ 10.)

In or around November 2001, Plaintiffs subscribed to a Tax Credit Program, whereby Plaintiffs agreed to place their bonds in trust with Caja de Valores, S.A. ("Caja") and, in exchange, received custody certificates and tax credits.  (Id. ¶ 12.)  Under the Program, Plaintiffs could credit any unpaid interest on their bonds toward local tax liabilities.  (Id. ¶¶ 12, 15); Bugliotti v. Republic of Arg. ("Bugliotti I"), No. 17 Civ. 9934 (LAP), 2019 WL 586091, at *2 (S.D.N.Y. Jan. 15, 2019).

The Trust Agreement governing this transaction provides, in relevant part, that the trust "is governed by . . . [Argentine] Law 24[,]441 . . . ."  Bugliotti v. Republic of Arg. ("Bugliotti IV"), 67 F.4th 102, 105 (2d Cir. 2023) (citing Trust Agreement § 2.1).  In turn, Article 18 of Law 24,441 provides that the trustee (Caja) may "exercise all actions necessary to defend the [bonds]" but notes that a "judge may authorize the trustor or the beneficiary to exercise actions instead of the trustee[] . . . ."  See id. (citation omitted).  Moreover, Section 5 of the Trust Agreement requires "the disassembly of the [bonds] for their crediting as [tax-credit certificates or custody certificates] . . . ."  (See Ramamurthi Decl., Ex. 2.3 § 5(iii).)

3

Plaintiffs do not allege that the Trust Agreement contains a waiver of sovereign immunity or submission of jurisdiction.

On or around December 24, 2001, the Republic declared a moratorium on the payment of principal and interest on bonds issued under the FAA. (Compl. ¶ 13.) Plaintiffs allege that the Republic has not made any payments on these bonds since it instituted the moratorium. (Id. ¶ 14.)

Plaintiffs' bonds matured on February 21, 2012, and January 30, 2017, respectively. (Id. ¶ 15.)

**B. Procedural History**

As relevant here, Plaintiffs filed suit in federal court on December 20, 2017 (the "Earlier Action"), seeking damages and injunctive relief based on the Republic's alleged non-payment on the bonds.[4] The Republic moved to dismiss, arguing lack of subject-matter jurisdiction, lack of personal jurisdiction, insufficient service of process, and failure to state a claim. (See Spencer Decl., Ex. 4.) The Court dismissed the Earlier Action on January 15, 2019, concluding that Plaintiffs' participation in the Tax Credit Program constituted an "exchange" of Plaintiffs' bonds, such that Plaintiffs no longer "owned" bonds under the FAA. See Bugliotti I, 2019 WL 586091, at *2-3. The Court concluded

---

[4] Plaintiffs also commenced amparo proceedings in Argentina, which were the subject of some discussion in the Earlier Action. As the amparo proceedings do not bear on the instant motion, the Court omits further mention of them here.

4

that Plaintiffs therefore could not rely on the Republic's waiver of sovereign immunity under the FAA and the Court lacked jurisdiction to hear the matter.  See id.

The Court of Appeals vacated the judgment as to damages, holding that the relevant question was "not whether Plaintiffs 'own' the bonds but whether they may sue to enforce them[,]" and it remanded the case for a determination of whether Plaintiffs are "entitled to sue to enforce the bonds." Bugliotti v. Republic of Arg. ("Bugliotti II"), 952 F.3d 410, 411 (2d Cir. 2020).  The Court of Appeals instructed this Court to apply Federal Rule of Civil Procedure 44.1 to interpret whether, under Argentine law, Plaintiffs retained a right to sue on the bonds in federal court. See id. at 414.

On remand, the Republic renewed its motion to dismiss for lack of subject-matter jurisdiction, lack of personal jurisdiction, and insufficient service of process, (see Spencer Decl., Ex. 11), and the parties briefed the question of whether, under Argentine law, Plaintiffs maintained a right to bring suit on the bonds held in trust.  The Court again dismissed the Earlier Action, concluding that Caja held an exclusive right to enforce the bonds, and Caja had not delegated that right to Plaintiffs. Bugliotti v. Republic of Arg. ("Bugliotti III"), No. 17 Civ. 9934 (LAP), 2021 WL 1225971, at *7-8 (S.D.N.Y. Mar. 31, 2021).

5

The Court also held that no party could bring suit on the bonds unless they were first "reassembled" by returning the custody certificates and economic value of the tax-credit certificates and terminating the trust. (Id. at *7-9.) The Court then noted that, still, Plaintiffs were not without recourse because Article 18 of Law 24,441 permits Plaintiffs to seek judicial authorization to enforce the bonds instead of Caja. See id. at *9 (citing Law No. 24,441, Art. 18, Jan. 9, 1995, B.O. 28061 (Arg.)).

Plaintiffs again appealed the dismissal order to the Court of Appeals. In recounting the procedural history below, the Court of Appeals recited this Court's determination that "no party – Caja or Plaintiffs – could bring suit under the bonds without first reassembling [them] . . . ." Bugliotti IV, 67 F.4th at 104 (emphasis added). It also quoted the Court's holding that "'Plaintiffs lack[ed] standing to bring suit to enforce the [bonds] . . . under Argentine trust law,' and therefore, could not 'invoke the [FAA's] service[-]of[-] process and jurisdictional [waivers] under the FSIA.'" See id. (quoting Bugliotti III, 2021 WL 1225971, at *9). The Court of Appeals affirmed the judgment, holding that "Plaintiffs do not have the right to recover the bonds under Argentine law." See id. at 107.

After the Court of Appeals ruled, Plaintiffs applied for judicial authorization orders from Argentine Commercial Court No. 9. (Compl. ¶ 20.) On June 21, 2023, Argentine Commercial

6

Court No. 9 issued such orders authorizing Plaintiffs to bring suit in place of Caja.  (Id. ¶¶ 2, 20; id., Ex. A.)  Plaintiffs do not allege that they have reassembled the bonds.

Plaintiffs filed the instant action on July 28, 2023, seeking damages for principal and post-maturity interest on the bonds, as well as an award of Plaintiffs' costs and attorney's fees and any pre-judgment interest.  (Id. ¶ 40.)  Plaintiffs again rely on the jurisdictional waivers and service-of-process provisions under the FAA to bring this suit.

## II. Legal Standards

The Republic moves to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), (5), and (6).

### A. Rule 12(b)(1)

On a Rule 12(b)(1) motion, a district court "must accept as true all material factual allegations in the complaint, but [may] not . . . draw interferences from the complaint favorable to plaintiffs."  Wasman v. Cliffs Nat. Res. Inc., 222 F. Supp. 3d 281, 286 (S.D.N.Y. 2016) (citation and internal quotation marks omitted).  The plaintiffs, as the non-moving party, bear the burden of proving subject-matter jurisdiction by a preponderance of the evidence.  See Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted); Davis v. Kosinksy, 217 F. Supp. 3d 706, 707 (S.D.N.Y. 2016).  A court may also refer to evidence outside of the pleadings.  Makarova, 201 F.3d at 11.

### B. Rule 12(b)(2)

Under Rule 12(b)(2), the plaintiffs bear the burden of demonstrating personal jurisdiction over the defendant. Troma Entm't, Inc. v. Centennial Pictures Inc., 729 F.3d 215, 217 (2d Cir. 2013). To meet this burden, the plaintiffs must make a prima facie showing of facts, which, "if credited by the ultimate trier of fact, would suffice to establish [personal] jurisdiction over the defendant." O'Neill v. Asat Tr. Reg (In re Terrorist Attacks on Sept. 11, 2001), 714 F.3d 659, 673 (2d Cir. 2013) (quotation marks omitted).

### C. Rule 12(b)(5)

Rule 12(b)(5) provides for dismissal of a claim for improper service of process. Fed. R. Civ. P. 12(b)(5). "[T]he plaintiff bears the burden of proving [the] adequacy" of service. Mende v. Milestone Tech., Inc., 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003) (internal quotation marks and citation omitted). In evaluating whether service of process was proper under a Rule 12(b)(5) motion to dismiss, a court must look to Federal Rule of Civil Procedure 4. The Court is required to dismiss an action if service was improper or incomplete "unless it appears that proper service may still be obtained." Garcia v. City of New York, No. 15-CV-7470 (ER), 2017 WL 1169640, at *4 (S.D.N.Y. Mar. 28, 2017) (quoting Romandette v. Weetabix Co., 807 F.2d 309, 311 (2d Cir. 1986)). In analyzing a motion to dismiss under Rule 12(b)(5), the Court may look outside

the four corners of the complaint to determine whether it has jurisdiction. Garcia, 2017 WL 1169640, at *4.

**D.   Rule 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient facts "to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A court must accept as true all well-pleaded facts and must draw all reasonable inferences in favor of the plaintiff. Twombly, 550 U.S. at 566.  But the court is not bound to accept as true legal conclusions that are couched as factual allegations. Iqbal, 556 U.S. at 678.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (citing Twombly, 550 U.S. at 557).  If there are insufficient factual allegations to raise a right to relief above the speculative level, the complaint must be dismissed. Twombly, 550 U.S. at 555.

**III. Discussion**

The Republic moves, again, to dismiss the instant action for lack of subject-matter jurisdiction, lack of personal jurisdiction, insufficient service of process, and failure to state a claim.  The Republic primarily argues (1) that the claims are time-barred under New York state's six-year statute of limitations for contract claims, and (2) that Plaintiffs are not

9

entitled to sue on the bonds as a matter of Argentine law. The Court agrees.

### A. **Plaintiffs' Claims Are Time-Barred**

The Republic argues first that Plaintiffs' claims are time-barred by New York's C.P.L.R. § 213(2). Under C.P.L.R. § 213(2), "an action upon a contractual obligation or liability, expressed or implied," must be "commenced within six years." The limitations period for principal and post-maturity interest begins to run the day after bond maturity. See Lucesco Inc. v. Republic of Arg., No. 16 Civ. 7638 (LAP), 2018 WL 9539167, at *2 (S.D.N.Y. Sept. 10, 2018) (citation omitted), aff'd, 788 F. App'x 764, 769 (2d Cir. 2019); see also Ajdler v. Province of Mendoza, 768 F. App'x 78, 79 (2d Cir. 2019) ("Once a creditor can no longer establish a right to repayment of principal, there is no basis or foundation upon which to allege a right to repayment of post-maturity interest." (quotation omitted)). Here, the bonds matured on February 21, 2012, and January 30, 2017, respectively. (Compl. ¶ 15). As such, the limitations period on the 2012 bonds expired on February 21, 2018, and the limitations period on the 2017 bonds expired on January 30, 2023. See C.P.L.R. § 213(2); (see also Def.'s Br. at 12 (citing Compl. ¶ 15).) Plaintiffs do not contest that C.P.L.R. § 213(2) applies, that the limitations periods have run, and that, absent an exception, the claims are barred.

10

Rather, Plaintiffs argue that New York's "savings statute," C.P.L.R. § 205(a), applies and saves the time-barred claims. In the alternative, Plaintiffs argue that Executive Order 202.8 (the "COVID-19 Order") tolls the statute of limitations by 228 days, such that the claims on the 2017 bonds are still timely. (See Opp'n Br. at 8-16.)

### i.   C.P.L.R. § 205(a)

Under C.P.L.R. § 205(a), a party may commence a new action within six months after termination of an earlier action unless the earlier action was dismissed for "voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits."  See C.P.L.R. § 205(a). The parties disagree whether the Court dismissed the Earlier Action on personal jurisdiction grounds. (See Def.'s Br. at 12-14; Opp'n Br. at 8-16.)

The Republic contends that the Court ruled on personal jurisdiction, which renders § 205(a) inapplicable and bars Plaintiffs' claims. (See Def.'s Br. at 13.)  Plaintiffs argue that the Court cabined its holding to whether Plaintiffs had standing to enforce the terms of the FAA – a basis separate from personal jurisdiction. (See, e.g., Opp'n Br. at 12.)  Plaintiffs' narrow reading ignores the plain text of the Court's holdings and

11

that, without the ability to sue under the FAA, Plaintiffs cannot demonstrate a basis for subject-matter and personal jurisdiction.

To take a step back, "the FSIA provides the sole basis for obtaining jurisdiction over a foreign state in federal court . . . ." Reiss v. Societe Centrale du Groupe Des Assurances Nationales, 235 F.3d 738, 746 (2d Cir. 2000) (quoting Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 439 (1989)). Under the FSIA, a district court may exercise personal jurisdiction over a foreign state where (1) it has original jurisdiction over the claim, and (2) service has been made under 28 U.S.C. § 1608. 28 U.S.C. § 1330(b) (emphasis added). A district court has original jurisdiction over "any nonjury civil action against a foreign state . . . as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity. . . ." Id. § 1330(a). Put another way, subject-matter jurisdiction exists under the FSIA when there is (1) a nonjury civil action, (2) against a foreign state, (3) a claim for relief in personam, and (4) no entitlement to immunity. As to the fourth element, specifically, a foreign state is "presumptively immune from the jurisdiction of United States courts" unless an exception applies. See Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993); see also 28 U.S.C. §§ 1605-07 (listing FSIA exceptions). Waiver is one such exception.

12

Plaintiffs' complaint in the Earlier Action invoked the terms of the FAA to argue that the Republic had waived immunity and submitted to the jurisdiction of this Court. (See Compl., Bugliotti v. Republic of Arg., No. 17-cv-9934 (S.D.N.Y. filed on Dec. 20, 2017), ECF 1 ¶ 10.)  The Court, in concluding that Plaintiffs lacked standing to sue on the FAA, held that Plaintiffs could "not invoke the 1994 FAA Bonds' service of process and jurisdictional provisions under the FSIA." Bugliotti III, 2021 WL 1225971, at *9.  Because Plaintiffs relied on the FAA to allege a basis for jurisdiction – that is, that the Republic had waived immunity and submitted to this Court's jurisdiction, — and Plaintiffs did not allege any other basis for subject-matter or personal jurisdiction, the Court concluded that it lacked jurisdiction and dismissed the Earlier Action.

On appeal, the Court of Appeals acknowledged the same, applying a de novo standard of review for lack of subject-matter and personal jurisdiction and reciting the Court's conclusion that Plaintiffs "could not invoke the FAA's service-of-process and jurisdictional waivers under the FSIA." See Bugliotti IV, 67 F.4th at 104.  Thus, the plain text of two court opinions makes clear that the Court ruled, in part, on personal jurisdiction grounds.

Accordingly, as the Court dismissed the Earlier Action for lack of personal jurisdiction, § 205(a) does not apply to the instant action, and Plaintiffs' claims are barred by § 213(2).

### ii.  The COVID-19 Order

Alternatively, Plaintiffs argue that the COVID-19 Order tolls the six-year statute of limitations by 228 days, such that Plaintiffs' claims on the 2017 bonds are timely.  (See Opp'n Br. at 16.)  Plaintiffs are incorrect.

The COVID-19 Order, like § 205(a), does not apply to Plaintiffs' claims.  Under the COVID-19 Order, former Governor Andrew Cuomo declared a state of emergency due to the COVID-19 pandemic and "toll[ed]" the limitations periods prescribed under New York's procedural laws "to cope with the disaster emergency" or "to assist or aid in coping with such disaster."  N.Y. Comp. Codes R. & Regs. tit. 9, § 8.202.8 (2020).  Governor Cuomo extended the tolling period, through successive executive orders, until November 3, 2020 – 228 days from the effective date.  See id. § 8.202.72.

Plaintiffs' effort to invoke the COVID-19 Order to toll the six-year statute of limitations by 228 days is without merit because "[t]he COVID-19 pandemic alone is insufficient to warrant equitable tolling without a more specific personal reason."  See Verne v. N.Y.C. Dep't of Educ., No. 21-CV-5427, 2022 WL 4626533, at *6 (S.D.N.Y. Sept. 30, 2022).  Plaintiffs provide no reason for how the COVID-19 pandemic affected their ability to file these claims.  To the contrary, between May 8, 2020 and October 5, 2020 – while the COVID-19 Order was in effect – Plaintiffs were

14

busy preparing expert testimony and briefing the issues ultimately considered in Bugliotti III. (See Bugliotti v. Republic of Arg., No. 17-cv-9934 (S.D.N.Y. filed May 8, 2020-Oct. 5, 2020), ECF 26-46.) That Plaintiffs were actively litigating during this span demonstrates, in the first instance, that Plaintiffs were capable of meeting filing deadlines and did not require assistance "coping" during the COVID-19 pandemic.

Permitting Plaintiffs to benefit from the COVID-19 tolling period now, nearly four years after its expiration and without a specific reason as to why, would result in "an unwarranted windfall" to Plaintiffs. See Loeb v. Cnty. of Suffolk, No. 22-CV-6410 (HG), 2023 WL 4163117, at *3 (E.D.N.Y. June 23, 2023). Thus, the COVID-19 Order does not apply to Plaintiffs' claims on the 2017 bonds, and these claims remain time-barred.

### B. Plaintiffs Are Collaterally Estopped from Relitigating Issues of Jurisdiction

Even assuming arguendo that any of Plaintiffs' claims were timely, they would nonetheless fail because Plaintiffs are collaterally estopped from relitigating issues of jurisdiction. Although preclusion doctrines are typically considered affirmative defenses subject to waiver, see Fed. R. Civ. P. 8(c), a court may nonetheless raise issues of collateral estoppel sua sponte where, as here, the prior action was brought before the same court and deference to the prior determinations promotes judicial economy.

15

See Doe v. Pfrommer, 148 F.3d 73, 80 (2d Cir. 1998) (observing that a court may, sua sponte, raise collateral estoppel issues); see also Grieve v. Tamerin, 269 F.3d 149, 154 (2d Cir. 2001). The doctrine of collateral estoppel, or issue preclusion, serves to conserve judicial resources and to relieve parties of the cost and vexation of repeat litigation. See Montana v. United States, 440 U.S. 147, 153-54 (1979) (explaining that the doctrine of collateral estoppel is "central to the purpose for which civil courts have been established").

Collateral estoppel bars relitigation of a specific factual or legal issue in a second proceeding where (1) the identical issue was raised in a prior proceeding, (2) the issue was actually litigated and decided, (3) the precluded party had a full and fair opportunity to litigate the issue in the earlier action, and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits. See Grieve, 269 F.3d at 153 (citation and internal quotation marks omitted); MMA Consultants 1, Inc. v. Republic of Peru, 245 F. Supp. 3d 486, 518 (S.D.N.Y. 2017) (citing Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir. 2006), aff'd, 719 F. App'x 47 (2d Cir. 2017).

Collateral estoppel, unlike the doctrine of claim preclusion, may apply to determinations of jurisdiction. Zapata v. HSBC Holdings PLC, 414 F. Supp. 3d 342, 348 (E.D.N.Y. 2019); see also Ins. Co. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456

16

U.S. 694, 702 n.9 (1982) ("It has long been the rule that [collateral estoppel] appl[ies] to jurisdictional determinations – both subject matter and personal."). That is, a dismissal for lack of jurisdiction may bar a party's invocation of jurisdiction in a second action based on the same facts. See Stengel v. Black, 486 F. App'x 181, 183 (2d Cir. 2012) (summary order); see also Reed v. Columbia St. Mary's Hosp., 782 F.3d 331, 335 (7th Cir. 2015).

Plaintiffs bring this second action for claims predicated on the same causes of actions and factual allegations as the Earlier Action. Plaintiffs concede as much, alleging that "[t]he [b]onds, claims, transactions, and occurrences at issue in the present action are the same as in the prior action 17 Civ. 9934 . . . ." (See Compl. ¶ 23.) Plaintiffs contend here that a judicial authorization order permits them to sue on the bonds under the FAA because they are not required to reassemble the bonds. (See Opp'n Br. at 18-20.) As explained below, Plaintiffs are collaterally estopped from relitigating issues previously decided by this Court in reaching its jurisdictional determinations. See Bugliotti III, 2021 WL 1225971, at *7-9 (concluding that Plaintiffs must reassemble the bonds before invoking the provisions of the FAA).

To be sure, each element of collateral estoppel is met. As discussed, the jurisdictional issues at bar are identical to those presented in the Earlier Action. The only additional fact is that,

17

since the Court of Appeals affirmed dismissal and terminated the Earlier Action, Plaintiffs have sought and obtained a judicial authorization order from an Argentine court. (See Compl. ¶ 21; id., Ex. A.) Still, absent reassembly of the bonds, this fact is insufficient to change the legal result or to establish a different basis for jurisdiction. See also JDM Import Co. Inc. v. Shree Ramkrishna Exports Pvt., Ltd., 2023 WL 2632179, at *5 (S.D.N.Y. Mar. 24, 2023) (considering identicalness).

Plaintiffs also had a full and fair opportunity to litigate these issues, which were actually litigated and decided in the Earlier Action. The Republic has now moved three times to dismiss Plaintiffs' claims, in part, for lack of subject-matter jurisdiction and lack of personal jurisdiction. (See Def.'s Notice of Mot. to Dismiss; Spencer Decl., Exs. 4, 11.) Plaintiffs have known the Republic's arguments for dismissal since the Republic filed its first motion to dismiss in 2018. Additionally, the Court already considered whether Plaintiffs could invoke the terms of the FAA to exercise jurisdiction over the Republic, and the Court determined that, regardless of the party seeking to enforce the bonds, reassembly of the bonds remained a precondition to jurisdiction.[5] See Bugliotti III, 2021 WL 1225971, at *7-9.

---

[5] The Court observes that Plaintiffs also rely on the FAA's service-of-process provisions for bringing this suit. (See Opp'n Br. at 7 (noting that Plaintiffs served a summons and the Complaint
(continued on the following page)

Accordingly, Plaintiffs had a full and fair opportunity to litigate the issues, which the court considered and decided in the Earlier Action.

Last, resolution of these issues was necessary to support a valid and final judgment on the merits. See DDR Const. Servs., Inc. v. Siemens Indus., Inc., 770 F. Supp. 2d 627, 649 (S.D.N.Y. 2011) (quoting MTS, Inc. v. 200 E. 87th Street Assocs., 899 F. Supp. 1180, 1184 (S.D.N.Y. 1995)) (explaining that an issue is necessary when it is not "mere dictum"); see also 18 Wright et al. § 4421.  Although "a dismissal for lack of jurisdiction is not an adjudication on the merits of a claim, . . . such a dismissal precludes [relitigation] of the issue[s] it decided." Stengel, 486 F. App'x at 183.  Because the Court dismissed the Earlier Action for lack of jurisdiction, its determinations were "necessary" to the ultimate judgment.

Accordingly, the doctrine of collateral estoppel applies to the issues of jurisdiction.  Plaintiffs' attempt to relitigate these points now through opposition papers is tantamount to their requesting reconsideration of the prior determinations.  Thus, even if Plaintiffs could allege timely claims, they would be

---

"as prescribed in the 1994 FAA for service of process on Argentina for bond matters," that is, "by serving Banco de la Nación Argentina in New York[] on August 16, 2023").)  Although the Court need not reach the issue of service to dispose of this case, the Court notes that the method of service is also improper in light of the Court's prior holdings.

collaterally estopped from relitigating the issues of jurisdiction. Plaintiffs' claims must therefore fail.

### C. Remaining Arguments

In light of the foregoing conclusions, the Court need not reach the parties' remaining arguments.

## IV. Plaintiffs' Request for Oral Argument

On November 27, 2023, Plaintiffs filed a letter requesting oral argument on the Republic's pending motion to dismiss. (See dkt. no. 31.) Because the Court decides the Republic's motion on the papers, Plaintiffs' request for oral argument is DENIED as moot.

## V. Conclusion

For the foregoing reasons, the Republic's motion to dismiss (dkt. no. 17), is GRANTED. The Clerk of the Court is directed to mark the above-captioned case as closed and any open letter motions denied as moot.

**SO ORDERED.**

Dated:     September 30, 2024
           New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge